## MAGEE v. CARPENTER.

1. The act of 1828, [Aik. Dig. 298, §5,] requiring deeds and conveyances of personal property to be recorded, applies to mortgages of personal property.
2. Deeds conveying personal property may be admitted to record on the oath of one witness, where there is but one to the deed.
3. The right of a mortgagor of slaves to the possession before default made may be sold under execution.
4. Such default will not be presumed from the fact merely that one instalment of the debt, to secure which the mortgage is made, is due.
5. The possession of a mortgagor, when consistent with the decree, is not a badge of fraud—therefore, where a mortgage was made to secure the mortgagees as sureties on three notes falling due at different times, with power to sell at the happening of the first default, the mortgagees may permit the property to remain in the possession of the mortgagor until the happening of the last default.

ERROR to the County Court of Mobile.

This was an action of trover brought by the defendant in error and two others, against the plaintiff in error, who recovered a judgment against him for thirty-nine hundred and sixteen dollars, for the conversion of three negro slaves.

From a bill of exceptions it appears that the plaintiffs offered in evidence a mortgage on the slaves sued for, executed to them on the 7th November, 1837, in the county of Montgomery by one Wait S. Hoyt—the condition of which was that the plaintiffs as co-securities for Hoyt and one Ford, had signed three notes, payable in Bank, dated 4th November, 1837, and falling due successively on the 1st June, 1838, 1839 and 1840, to be void if Hoyt and Ford paid off and discharged the notes,

" But should the said Wait S. Hoyt, or any person in his stead fail to pay or cause to be paid, each and every one of said notes, as they shall respectively become due, then on the first defalcation, the said J. B. Carpenter, &c. or either of them, shall have full power and authority, and are hereby empowered to seize the said slaves, and after a continuing defalcation of thirty days, and further notice of thirty days in one or more public papers of the vicinity, the same to sell at public auction to the highest bidder for cash, &c.

" It is hereby further understood and agreed that the said slaves are to remain in the possession of the said Wait S Hoyt until defalcation, and that only such number of said slaves shall be at any time sold as may be required to meet the immediate defalcation, or amount in arrear, at the time of the sale."

The mortgage was witnessed by one person, on whose evidence it was admitted to record on the day after its execution, in the County Court of Montgomery.

To the admission of this mortgage in evidence, the defendant objected because not proved and recorded according to law, but the objection was overruled and the paper read in evidence to the jury. The plaintiff also proved the execution of the mortgage by the subscribing witness.

The plaintiff also proved that the defendant, as sheriff of Mobile county, levied on the slaves described in the mortgage, by virtue of an execution in favor of the State Bank v. Ross, Hoyt & Ford, on the 3d April, 1839, and that on the day of sale the plaintiffs demanded the negroes of the sheriff.

The defendant proved that Hoyt, the mortgagor, had been in the continued possession of the negroes, from the date of the mortgage until the time of the levy—that he brought the negroes with him when he moved to Mobile from Montgomery, in December, 1838, and had exercised acts of ownership on the property ever since.

On this evidence the Court charged the jury, that after the perfection of the deed, all the interest of Hoyt become vested in the mortgagees, and the demand being made by them of the sheriff for the property, left no interest in the defendant, Hoyt, subject to the execution, but that the property was in the present plaintiffs.

Magee v. Carpenter.

The defendant moved the Court to charge the jury—

1. That if they believed that after the mortgage was made and executed, Hoyt remained and continued in the possession of the negroes until the levy was made, the plaintiffs cannot recover.

2. That if the jury believed that Hoyt was in possession of the negroes when they were levied on by the sheriff, and that the plaintiffs never did take or receive the negroes in their possession after the maturity of the notes mentioned in the mortgage, the plaintiffs cannot recover.

3. That if they believed that the defendant levied on the negroes in the possession of Hoyt, and that they had remained and continued in his uninterrupted possession until the time of the levy, and that the defendant afterwards, and by · virtue of the execution, and under the levy, sold the negroes, the plaintiffs cannot recover.

These charges the Court refused to give, and the defendant excepted, as well as to the charge given.

The defendant prosecutes this writ and assigns for error the matter of the bill of exceptions.

CAMPBELL, for the plaintiff in error. The deed was void as against the plaintiff in execution, because not proved in the mode prescribed by law, and was improperly admitted to record. Two witnesses are necessary to a deed to authorize it to be admitted to record by the proof of witnesses. [5 Porter, 413.]

The deed not being properly recorded, the *lien* of the plaintiff attached. The deed takes effect from the registry as against a creditor, and *bona fide* purchaser. [1 Pick. 164; 3 id. 55; 2 Hawks, 520; 4 Leigh, 550.]

If the registration had been complete, the defendant in execution, Hoyt, being in possession, had an interest subject to levy and sale. [3 Stew. & Por. 408; 2 Ala. 318.]

DARGAN, contra. The mortgage was properly admitted on the proof of the subscribing witness, its effect was a matter to be inquired of subsequently.

There is no law requiring a deed to be attested by two witnesses, or by any, and the proof by one is sufficient to admit

the deed to probate and registration, it follows therefore, that where there is but one witness, he can prove the deed for registration. The statute, it is true, in giving the form of the probate, requires the witness to swear that the deed was executed in his presence, and that of the other subscribing witnesses, but that can only apply where there are more witnesses than one, and all attesting the paper at the same time—otherwise, three witnesses, not attesting at the same time, could not probate the deed for registration. The case referred to in 5th Porter, 413, has been modified if not overruled by Bradford v. Dawson, 2 Alabama Rep. 203.

By the levy, the sheriff was lawfully possessed of such interest as Hoyt had in the property, and if the possession prevented him from being a trespasser in the first instance, he became so on his refusal to deliver the slaves on the demand of the mortgagees, and trover will therefore lie for the value of the property.

ORMOND, J.—We are first to inquire whether the act of 1828, [Aik. Dig. 208, §5,] applies to such an instrument as this? Its language is, "all deeds and conveyances of personal property in trust to secure any debt or debts, shall be recorded in the office of the Clerk of the County Court of the county, wherein the person making such deed or conveyance shall reside, within thirty days, or else the same shall be void against creditors and subsequent purchasers, without notice," &c. We think the language employed sufficiently broad to cover a mortgage of personal property. Previous to the passage of this act, deeds of this description were required to be recorded in open Court, within twelve months after their execution, and no reason can be assigned for making the change effected by this act in reference to deeds of trust which will not apply equally to mortgages. The Legislature no doubt supposed that the general terms employed of "deeds and conveyances," would embrace all cases in which property was conveyed upon a condition, and such being the evident intention, and, it may be added, the practice, under this law, such must be its effect.

2. The question whether, where there is but one witness to a deed of trust or mortgage, it can be recorded on the proof of

its execution by the witness is one of more difficulty. The language of the act is, "such deeds and conveyances of personal estate shall be proved or acknowledged as deeds and conveyances of real estate." [Aik. Dig. 208, §7.] The reference for the mode or manner of proving the deed in order to its registration, is to the mode provided by law for the proof of deeds conveying land.

The first act on the subject passed in 1803,[Aik. Dig. 88, §1.] declares that if the deed be proved by one or more of the subscribing witnesses to it, or acknowledged by the grantor, before one of the Judges of the Superior, or Justice of the County Court, and such proof or acknowledgement, be certified on the deed, that it shall be received as evidence, &c.

The third section provides for the manner of probate where the parties are out of the State, and uses the term *witness*, in the singular number.

In 1812, an act was passed giving the form of the certificate of the probate—the portion material to this inquiry is to the following effect: " Personally appeared the above named E. F., one of the subscribing witnesses to the above deed, who, being first duly sworn, deposeth and saith, that he saw the above named A. B. whose name is subscribed thereto, sign, seal and deliver the same to the said C. D. that he, this deponent, subscribed his name as a witness thereto in the presence of the said A. B. and that he saw the other subscribing witness (or witnesses, naming them, as the case may be,) sign the same in the presence of the said A. B. and in the presence of each other, on the day and year therein named."

Subsequent enactments authorized the proof, or acknowledgement, to be taken by the Clerks of the Circuit and County Courts, or two Justices of the Peace, and finally by a single Justice.

There is no statute which requires a deed to be attested by two or more witnesses to give it validity, or indeed that it should be witnessed at all. In the case of Fipps v. McGehee, [5 Porter, 413,] this Court held that the form required by the statute must be pursued substantially, and that the probate of a deed by one witness, that he saw the deed signed and delivered, without also stating that he saw the other witnesses

"sign the same in the presence of the maker, and in the presence of each other," was defective. This it will be observed was a deed conveying land to which there was more than one attesting witness and in my opinion the case determines nothing more, than where there are more witnesses than one, the form of the statute must be pursued. I think the whole object of the form was to produce uniformity in the certificate of probate. That the Legislature supposed a deed would be admitted to probate where there was but one witness, is shown by the third section, which expressly gives the power to one witness, where the witness resides out of the State, and it would be difficult to assign a reason for admitting a deed to probate, on the oath of one witness out of the State, which would not apply within the State.

But be the law as it may in reference to deeds conveying land, as it respects deeds for personal property, the majority of the Court entertain no doubt that, where there is but one witness to the deed, it can be recorded on proof of its execution by him. The meaning of the Legislature, that these deeds "shall be proved, or acknowledged, as deeds and conveyances of real estate," evidently relates to the mode and manner of the proof, and the officers before whom it shall be made. The whole object of putting such a deed on record, is for the purpose of notice; it accomplishes nothing else, as was held by this Court in the case of Bradford & Dawson v. Campbell, [2 Ala. Rep. 203.] The certificate of probate is not evidence of the execution of the deed, and it would have been a strange absurdity if the Legislature had required higher evidence of the execution of the deed, to place it on the record of the County Court, for the purpose of notice merely, than would be required to give the deed validity when offered in evidence in a Court of justice.

The mortgage in this case was made to secure the mortgagees against liability as sureties of the mortgagor, on three notes, falling due at different periods of time, and stipulates that the mortgagor shall retain the possession of the slaves mortgaged until default be made—that when a default happened, by a failure to pay either of the notes at maturity, the mortgagees might seize and sell a sufficiency of the property to pay the amount then due. As the possession of the mort-

gagor was consistent with the terms of the deed, no presumption of fraud arises from the mere fact of the possession remaining with him after the execution of the deed, unless such possession continues after the happening of the last default, by the failure to pay the last note, then such possession would doubtless be a badge of fraud. We do not think the permission by the mortgagees to the mortgagor to retain the possession after the happening of the first and second defaults, would subject the property to sale by execution, at the instance of a third person, because such permission could work injury to no one but themselves, and not being inconsistent with the deed, would not be a badge of fraud.

If a default was proved by the omission of Hoyt, the mortgagor, to pay the first note to the Bank, which fell due on the 1st June, 1838, then, as the mortgagees were entitled to the possession of the slaves, to sell for such default, the demand by them of the sheriff, put an end to his right to retain them under the levy, conceding that his levy was not a trespass. If no defalcation was proved, then, according to the previous decision of this Court, the right to the possession, which, on that hypothesis, would be in Hoyt, was such an interest as could be sold under execution. [See the case of Williams & Battle v. Jones, 2 Ala. Rep. 314, and the previous decisions of this Court on which it was founded.]

This case was argued here, and from what appears in the record in the Court below, as if the mere fact that the first note was due when the levy and sale was made, was evidence that a default existed at that time. That could only happen by a failure to pay the note—whether it was paid or not, we are not informed by the record. If any presumption could be indulged, it would rather be that the note was discharged. At all events, it devolved on the plaintiffs to prove a default affirmatively, otherwise they showed no right to the possession of the slaves.

It results from this view, that the charge of the Court, that the right to the property vested in the plaintiffs by the perfection of the deed, leaving no interest in the property subject to the execution of the defendant, was erroneous, and for that cause, the judgment must be reversed and the cause remanded.

As this cause goes back for a new trial, it is proper to say that we have taken no notice of the fact, that the slaves were removed from Montgomery to Mobile, because no point was made, in argument, in reference to it, or the act requiring property so incumbered to be recorded in the county to which it is taken, and which, indeed, from the appearance of the record, was done in this case.

COLLIER, C. J.—It is not essential to the validity of a deed that it should be attested by witnesses, but to authorize its registration on the proof of a subscribing witness, it should appear to have been attested by at least two. This I think apparent as it respects a conveyance of realty, from the acts of 1803 and 1812, [Aik. Dig. 88-9,]—and the act of 1828 declares, that " deeds and conveyances of personal estate shall be proved, or acknowledged, as deeds and conveyances of real estate." [Aik. Dig. 208.] The registration of deeds, upon the acknowledgement of the grantor, is expressly authorized, whether their execution be attested by witnesses or not. [See Fipps v. McGehee et al, 5 Porter's Rep. 413.]

The conclusion expressed, seems to me to result from the consideration that our registry acts are introductive of a new rule of law, and a party who would avail himself of them, must bring himself substantially within their provisions.— Hence, I dissent from so much of the opinion of the Court as ascertains the law to be different from what I have stated.