## TICKNER AND DAY v. WISWALL.

1. When a debtor, in contemplation of insolvency, executes a mortgage to a creditor, of personal and real estate, but reserves the power to sell the personal estate, accounting for the proceeds, and the creditor is aware of the contemplated insolvency, this reservation is sufficient to create a presumption of fraud; and it rests with the creditor to show, that the transaction is explained by other facts and circumstances, so as to rebut the suspicion of fraud.

2. A conveyance, colorable and fraudulent as to a part, is void as to the whole of the property conveyed by it, so far as creditors are concerned.

3. When a part of the consideration of such a conveyance is, the payment of prior incumbrances upon a part of the property conveyed, the mortgagee is not entitled to be reimbursed for these, as the fraud vitiates the whole consideration.

Writ of Error to the Court of Chancery for the 1st District.

THE matters of this bill, and the answers to it, are stated

39

in the report of a decision upon an appeal from a decree dissolving the injunction, in 6 Ala. Rep. 178, so far as connected with that motion. It now comes here upon the final decree, declaring the deed of mortgage exhibited by the complainant, Wiswall, to be void as against him, and directing a sale, first, of the personal estate covered by it, and then of the St. Francis street store and lot, if the personal estate does not produce sufficient to satisfy the complainant's demand. The bill, as before stated, exhibits a copy of the mortgage deed, and charges that it "was not a *bona fide* transaction between the defendants, Ticknor and Day, or founded on any *bona fide* transaction between them. That Ticknor was not indebted in a large amount to said Day; and that Day was not liable in a large amount for said Ticknor, as stated in the mortgage." In the interrogating part of the bill, the defendants are required to "set forth and discover the consideration, if any, of the aforesaid pretended mortgage; the amount of indebtment and liability, if any, which the same was made to secure, and all the particulars thereof; how the same originated, the nature of the said liabilities, and each and every instrument creating the same; and who were the holders and owners of such instruments and each of them, if any, at the time of the execution of the mortgage; and whether any of them creating liabilities on the part of said Day, and which of them have been paid; and whether Ticknor has paid to Day any, and if any, what part of the debt due to him.

In addition to seeking to subject the property mortgaged to Day, the bill is framed with a view to the discovery of any real or personal estate, or choses in action of the said Ticknor, for the purpose of subjecting them also to the payment of the complainant's judgment. An injunction is asked to restrain Tuckner and Day from assigning or transferring the real and personal property, choses in action, &c., to which Ticknor then was in any manner entitled. On the coming in of the answers, this injunction was dissolved; but the interlocutory decree to this effect, was reversed by this court.

The answer of Ticknor, adopted by Day, asserts the payment by Day, for Ticknor, of some $24,000, to certain named commercial houses, and $7000 loaned money, at two specified

Ticknor and Day v. Wiswall.

dates, for which Ticknor had given his notes to Day.    Day, by his answer, admits the payment by Tucker to him, since the date of the mortgage, out of the proceeds of the goods mortgaged, $10,600.

It is also insisted by Ticknor, that at the time of the mortgage, the St. Francis street store was incumbered by other mortgages, which are specified, to the sum of $15,744 03, which mortgages were assumed and subsequently paid off by Day; and that in order to secure Day, "for the above mentioned debts," the mortgage was executed.

The final decree is assigned as error.

J. A. CAMPBELL, for plaintiffs in error, insisted—

1. That considered as a mortgage, this deed is not void. The permission to the debtor to remain in possession of the personal estate, though it may be inoperative against an attaching creditor, does not render the deed void.    [7 Peters, 614; 1 Metc. 10; 6 Rand. 285.]

2. Whether a deed be legal or otherwise, depends on the intention of the parties at the time of the execution.    If not then fraudulent, it does not become so by matter *ex post facto.* [Shep. Touch. 67; 5 Term. R. 425; 6 Rand. 288.]

3. The allowance of possession to the grantor, after an absolute sale, may avoid the title as to the property possessed, but it cannot operate to divest the title to property which may be lawfully permitted to remain in the grantor's possession.    [19 Wend. 181.]

4. The cause having been heard upon bill and answer, the answer must be taken as true.    The deed is not fraudulent *per se,* and the fraudulent intent being denied, there is nothing to set the deed aside.    The court will not look at mere circumstances of fraud.    [11 Wend. 240; 4 Ala. Rep. 379.]

5. The cause was "submitted for a decree, upon the bill, answers and exhibits," which clearly implies the consent of the parties.    [Rule 14.]

6. Independent of the deed, the Chancellor ought to have allowed the liens upon the property which Day discharged. [3 B. Monroe, 298.]

K. B. SEWALL, contra, argued—

1. That the decision formerly made, when the cause was here on the motion to dissolve, &c., was on the facts as now presented, and is consequently the law of the case. The party had the opportunity to change the *prima facie* aspect, by evidence, and not having done so, it must be inferred he is unable.

2. It is not necessary the deed should be fraudulent on its face. It is sufficient if it is suspicious, or made under circumstances of suspicion; it will be pronounced fraudulent if these matters are not satisfactorily explained. In courts of equity, it is clear subsequent acts may be such as to render a prior fraudulent intent apparent. [Robbins v. Parker, 3 Metc. 120.]

3. The answer of Day, alledging payment of incumbrances, is not responsive to the bill, and are not proved. The cause was not submitted by consent; on the contrary it was continued one year on the docket, after the former decision, and during all this time, the defendant's remained passive.

GOLDTHWAITE, J.—1. When this cause was here at a former term, the only matter determined was, that the answers were insufficient to dissolve an injunction previously awarded. [See 6 Ala. Rep. 178.] It was not then material to notice the difference of the stipulations of the mortgage with regard to the real and personal estate. What was there said, refers itself exclusively to the question then before the court. We discussed the case no further than was sufficient to show, that the acts of the parties, with relation to the personal estate, were such as to make that liable to an execution creditor of the mortgagor. The cause is now before us as on the final decree, subjecting both real and personal estate to the creditor; it is therefore necessary to consider the entire case made by the answers and exhibits—it having been heard alone upon these and the bill, without any aid from extrinsic evidence.

In doing this we shall purposely refrain, as we did on the former occasion, from the discussion, whether the reservation of a power to sell the mortgaged estate will necessarily prevent the deed from operating as a conveyance, either as to

the specific thing as to which this power is reserved, or as to others contained in the same conveyance, but controlled by a similar reservation. Since this cause was here, we have decided several cases in which deeds of conveyance, apparently intended as securities, contained provisions by which the use of perishable chattels were reserved to the mortgagor until the expiration of the law day ; and in some of which the actual consumption of a portion of the chattels was a necessary consequence of the use. [Dubose v. Dubose, 7 Ala. R. 235 ; Elmes v. Sutherland, Ib. 262 ; Pope v. Wilson, Ib. 690 ; Graham v. Lockhart, 8 Ib. 9.] In most of these decisions we steadily kept in view the distinction which might be drawn, if the mortgage or other security was made by a debtor in contemplation of insolvency, and accepted by the creditor with a knowledge of this fact ; but we have never decided what legal consequences would flow from these circumstances. It becomes necessary to do so in the present case, and to this point we shall chiefly direct our examination.

It is difficult to conceive, why a debtor, upon the eve, or in contemplation of insolvency, should provide for the reservation of a power to sell, or to use the mortgaged estate, unless some benefit to himself was intended ; and it seems equally so, to imagine how a creditor, with a knowledge of this circumstance, can assent to receive such a security without lending himself to carry out the debtors intention. If an insolvent debtor, in contemplation of admitted insolvency can stipulate with a creditor to protect an estate for his own enjoyment, use, or benefit, it is impossible to foresee the multitude of frauds which must be sanctioned by admitting the validity of the transaction. In a neighboring State, it has been held that deeds executed as securities, but reserving the use of articles which must be consumed in the use, are fraudulent as against creditors. [Darwin v. Handley, 3 Yerg. 502 ; Somerville v. Horton, 5 Ib. 541.] But an examination of these cases seems to indicate, the fraud was inferred from the peculiar circumstances attending each transaction. In Massachusetts a somewhat different rule prevails, and more in accordance with the decisions of our own court, to which reference has been previously made. There are conveyances

with reservations similar to that contained in this mortgage, which have been sustained as *prima facie* good, though liable to be defeated as fraudulent, if made by the debtor, and taken by the creditor under suspicious circumstances. [Briggs v. Parkman, 2 Metc. 258; Jones v. Huggeford, 3 Ib. 515; see also Robbins v. Parker, Ib. 117.] In Jones v. Huggeford it is said, "the party who alledges the transfer to be fraudulent, and merely colorable, may submit to the jury all the supposed badges of fraud arising from the form of the conveyance, and the stipulations of the vendor, which tend to raise the presumption of fraud. But they will be open to explanation, and may be shown to be consistent with honesty of purpose and good faith, in the parties to the contract." We have before suggested, the difficulty there is in conceiving any reason for such a reservation by a debtor, when on the eve of admitted insolvency, and we think it rests with the creditor taking the conveyance, with such reservations, under such circumstances, to show that the transaction is explained by other facts and circumstances, so as to rebut the suspicion of fraud. Such was the decision made by us, in Marriott v. Givens, 8 Ala. R.

Such being the rule of law governing the conveyance it is only necessary to ascertain if the admissions of the answers make out, to a reasonable certainty, that Ticknor was in failing circumstances, or rather on the eve of notorious insolvency. This, we think, abundantly appears from the whole case. The charge is, that the deed was made immediately prior to large judgments being entered, and with reference to this charge; it is conceded that there are outstanding judgments older than that of the complainant, entirely unsatisfied. This matter is charged as a badge of fraud, and is not denied by Day, nor does he assert his ignorance of the fact. We must, then, conclude the mortgage was taken with a full knowledge of the attending circumstances, and there being no evidence, or even allegation, in explanation of the transaction, we consider it as exhibiting the intention to provide a means for Ticknor to carry on his business unmolested by other creditors. Thus creating a secret trust for his benefit, which, in law, is a fraud upon his creditors.

2. It is urged, however, if the conveyance is inoperative for this reason, as to the personal estate, it should, notwithstanding, be sustained as to the real estate. The rule in this respect is, that a deed void for being colorable and fraudulent as to part, is void as to the whole of the property conveyed by it. [Somerville v. Horton, 4 Yerg. 541; Darwin v. Handley, 3 Ib. 502; Hyslop v. Clark, 14 John. 458; Austin v. Ball, 20 John. 442; Mackee v. Carnes, 5 Cowen, 547.] If it was otherwise, the statute would be but a sorry attempt at prevention, and the fraudulent debtor, in many cases, would attain his object.

Another point strongly insisted on is, that the antecedent incumbrance on the St. Francis street store, which Day has paid subsequently to the execution of the conveyance to him by Ticknor, are not avoided by that; and that as to those payments, he is entitled to charge that property. Independent of the question which is suggested, as arising out of the supposed consent that the cause should be heard on the bill and answer, which we deem it unnecessary now to decide, there is a view which is entirely conclusive.

The answers assert that these incumbrances were assumed by Day, as a part of the consideration upon which the mortgage was executed, and it is in this view alone, that the allegations respecting them are entitled to be considered as responsive to the bill, in reply to the call to disclose what was the consideration. As it thus enters into the deed, which has been shown to contain stipulations, the intent of which must be presumed to be to hinder creditors, it seems clear, that Day cannot set them up against the creditor, [Borland v. Walker, 7 Ala. Rep. 269.]

The result of this examination is, the affirmance of the decree.