## CONSTANTINE *vs.* TWELVES.

29 607
99 112

[BILL IN EQUITY BY MORTGAGEES TO ENJOIN PROCEEDINGS AT LAW BY ATTACHING
AND EXECUTION CREDITORS OF MORTGAGORS.]

1. *Mortgage held fraudulent and void as against creditors.*—A mortgage, executed by a man and his wife; who were engaged in the mercantile business as partners, to secure certain debts on which the mortgagees were bound as sureties and endorsers for them, and also a balance due one of the mortgagees on the original purchase of a stock of goods from him; conveying, by general words of description, the debtors' entire stock of goods, with the outstanding notes and accounts; neither fixing a law day, nor authorizing the mortgagees to sell or take possession of the goods on default being made in the payment of the secured debts; and providing that the mortgagors should continue to carry on their business as before, and to sell to responsible men in the usual way, (the mortgagees to have the entire control of the proceeds of sale, for the purpose of paying the secured debts,) and that all other goods which, through the assistance of the mortgagees, might be afterwards purchased for replenishing the stock and keeping up the business, should be held liable to all the provisions of the mortgage,— is not fraudulent on its face, but becomes fraudulent and void, as against other creditors, on proof that the husband, at the time it was executed, was wholly insolvent; that it conveyed all the separate property of the wife, except the interest therein which had been conveyed by previous mortgage to secure the balance due on the purchase of the original stock of goods; that the mortgagees, at the time they agreed to become bound on the debts made in replenishing the stock of goods, knew that the mortgagors were somewhat embarrassed, and unable to purchase goods on their own credit; that they became bound for these debts, on the agreement of the mortgagors to secure them against all loss on account of their suretyship, and also to secure the balance due one of them on the purchase of the original stock of goods, although it was not shown that the first mortgage was an inadequate security; that there were other creditors at the time the mortgage was executed, one of whom had reduced his debt to judgment; and that within a few months after the execution of the mortgage, although it stipulated that the business should be carried on at the same place, the mortgagors packed up the goods, with the consent of the mortgagees, and attempted to remove them beyond the limits of the State.

APPEAL from the Chancery Court of Greene.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by F. L. & D. F. Constantine, late partners in trade, to enjoin certain attaching and execution

creditors of Young L. West and Penelope, his. wife, from further proceedings at. law to condemn to the satisfaction of their debts a stock of goods which the complainants claimed under a mortgage executed to them by said West and wife, who were also made defendants to the bill. The deed, on which the complainants found their claim, is in these words:

"The State of Alabama, ) Whereas D. F. Constantine County of Greene. ∫ having heretofore sold a stock of goods, wares and merchandize to Penelope West, and set her up in the mercantile business, for which stock of goods the said Constantine has not yet been paid; and whereas the said D. F. Constantine and F. L. Constantine having since become bound for Penelope West for subsequent purchases of goods, viz.: to Catlin, Leavitt & Co., of New York, for the sum of about $1249 25; to Webb & Smith, of Mobile, for about the sum of $70; to Oliver, Jones & Granger, of New York, for about the sum of $111 96; to George C. Dunbar, of New York, for about the sum of $360 25,—for all which sums of money the said F. L. & D. F. Constantine have become bound as security; and the said P. West and Y. L. West, her husband, being willing and desirous of securing the said F. L. & D. F. Constantine from all loss and damages by reason of said suretyship, and also to_appropriate the proceeds of said goods, and of all others they now have on hand, first to the payment of said debts above enumerated, and then to the payment of D. F. Constantine of the balance of the purchase heretofore made of him, which will appear by a deed heretofore made by the said parties to the said D. F. Constantine, on the 27th day of June, A. D. 1853, and recorded in Greene county: Now, therefore, in consideration of the premises, and of the further sum of five dollars in hand paid to the said P. West by the said F, L. & D. F. Constantine, the said P. West and Y. L. West, her husband, have granted, bargained and sold, and by these presents do grant, bargain and sell, unto the said F. L. & D. F. Constantine, all the goods, wares and merchandize, which the said P. West and Y. L. West have now on hand, comprising the entire stock of goods with which they are now carrying on the business of merchandizing in the town of Eutaw, including

as well those contained in the invoices which were lately purchased from the foregoing named parties, as those before purchased from the said D. F. Constantine or any other person, together with all the notes and accounts made by the said Wests for goods sold during the year 1853, and due the first of January, 1854, amounting to about the sum of $1200 ; to have and to hold the same to the said Constantines, their heirs and assigns forever. Nevertheless, it is hereby expressly understood and agreed, that the said P. West shall continue to carry on the said business in the town of Eutaw as heretofore ; to sell the said goods, wares and merchandize, to good and responsible men, in the usual way, the proceeds of which the said Constantines are to have the entire control of, for the purpose of satisfying and paying off the debts before specified, in the order mentioned ; it being the object of this deed to secure the payment of the purchase money for said goods, from the proceeds of the sales thereof, before any other debt which may be due or contracted for by the said P. West and Y. L. West, or either of them ; and the business is to be carried on by them, and the collections made by the said D. F. Constantine legitimately for that purpose ; and all the proceeds of the said goods, beyond what may be necessary to pay the purchase money, the said P. West is entitled to, and, if received by the said D. F. Constantine, to be paid over to her or her assigns. And it is further agreed, that any and all other goods which may hereafter be purchased, through the assistance of the said Constantines, for replenishing the stock and keeping up the business, shall be held liable to all the provisions of this deed. But if the said P. West or Y. L. West shall pay and satisfy all the debts herein specified, together with the balance due D. F. Constantine for the original purchase, then this deed to be void ; until then, to remain in full force and effect.

"In testimony whereof, the parties have hereunto affixed their hands and seals, this the 6th day of January, A. D. 1854.

PENELOPE WEST, [seal.]
YOUNG L. WEST, [seal.]
F. L. & D. F. CONSTANTINE, [seal.]"

The deed of West and wife to D. F. Constantine, which is

referred to in the deed above copied, is dated June 27, 1853 ; purports to be made to secure the payment of seven promissory notes, amounting in the aggregate to $7,069 23, which were executed by the Wests to said Constantine for the purchase money of a stock of goods bought by them from him, and which fell due on different days between the 1st August, 1853, and the 24th December, 1854 ; conveys certain real and personal property, which is thus described :—" The northeast quarter, and the east half of the north-west quarter, of section thirty-one, township twenty-one, range two east, it being the land held by the said Penelope West in right of dower in the estate of her former husband ; also the following slaves, viz. :. Frank, Hannah, Tom, Sam, Alfred, Richard, Susan, Moses, Solomon, and Sarah and her child,—all of which lands and slaves are known and claimed as the separate property of the said Penelope West" ; and is expressed to be made upon the following conditions : *First*—That on default being made in the payment of said promissory notes, or any one of them, when the same falls due, then the said D. F. Constantine shall take possession of the said lands and slaves, or so many of said slaves as may be necessary to pay off and satisfy such note or notes as may then be due, and, after advertising the same for ten days at the court-house door in the town of Eutaw, shall sell the same publicly, for cash, at said court-house door, and out of the proceeds of said sale, after first paying all necessary expenses, shall pay and satisfy whatever may be then due and unpaid on any of said promissory notes ; and as often as default is made in the payment of any of said promissory notes, the said D. F. Constantine may advertise and sell, as aforesaid, so much of the property hereby conveyed as may be necessary to satisfy any and all of said promissory notes, as they respectively fall due,—the slaves to be sold first ; and if it shall be necessary to sell the land, the same shall be advertised for thirty days, and sold at the court-house door in the town of Eutaw ; and out of the proceeds of such sales, if there should be any surplus remaining, after the satisfaction and payment of the said promissory notes, then the said surplus shall be paid over to the said Penelope West, her heirs and assigns. *Second*—That the said Young L. and Penelope West shall retain the possession

of the said lands and slaves hereby conveyed, and enjoy the use thereof as heretofore, until default is made in the payment of the said promissory notes as above specified. *Third*—And if the said Young L. and Penelope West shall well and truly meet, pay off and discharge the said several promissory notes, as they respectively fall due, to the said D. F. Constantine, his heirs and assigns, then this indenture to be void ; otherwise, to remain in full force and virtue."

The prayer of the bill is, that the creditors of the Wests may be enjoined from further proceedings under their attachments and executions ; that a receiver may be appointed to take charge of the stock of goods conveyed by the deed, and to sell them under the direction of the court ; that the proceeds of the sales may be paid over to complainants, or applied to the payment of the debts named in the deed, in the order in which they are therein specified ; and the prayer for general relief is added.

West and wife answered the bill, admitting the purchase of the stock of goods from D. F. Constantine, and the execution of the two deeds above set out ; alleging that said Constantine practised a fraud upon them in the sale of the goods, and that the proceeds of sales since received by him were sufficient to discharge the amount really due ; and further alleging that the property conveyed by said deed to D. F. Constantine was the separate property of Mrs. West, secured to her by a marriage contract which gave her no power thus to charge or assign it. They also filed a cross-bill, alleging these facts, and asking that the contract of purchase might be rescinded on account of the fraud, that the mortgage to D. F. Constantine might be canceled, and that the mortgage to F. L. & D. F. Constantine might be foreclosed.

Stephen Twelves, one of the defendants, whose debt against said Young L. West was reduced to judgment in October, 1853, answered the bill ; insisting that the lien of his judgment was superior to that of the complainants, and that their mortgage was made with the intent to hinder and delay creditors. The other creditors, who were made defendants to the original bill, also filed separate answers and cross-bills, asking that the complainants might be required to exhaust the property conveyed to D. F. Constantine, before they were

allowed to share in the property conveyed by the mortgage to F. L. & D. F. Constantine; but they did not attack the validity of the mortgage to F. L. & D. F. Constantine. The trustee in the marriage contract between West and wife, and Robert West, their only child, as one of the beneficiaries under the marriage settlement, were brought in as defendants to these cross-bills.

The record is very voluminous, but the opinion of the court renders it unnecessary to give a further statement of its contents.

On final hearing, the chancellor held, 1st, that the execution of Twelves was superior to the complainants' lien, and must be first paid out of the proceeds of the sale of the goods, which were in the hands of the receiver; 2d, that the claims paid by complainants, as endorsers for the Wests, should be next paid; 3d, that the claim of D. F. Constantine was superior to that of the other creditors of the Wests, but he must first exhaust the security afforded by his mortgage; 4th, that in the event said Constantine failed, by the next term of the court, to file a bill against West and wife, their child and trustee, to foreclose his mortgage, the residue of the fund in court should be distributed among the other creditors of the Wests; and, 5th, that the cross-bill of West and wife must be dismissed, but without prejudice to their right to set up the defense of fraud to the bill which D. F. Constantine might file to foreclose his mortgage.

From this decree the complainants appeal, and now assign as error, 1st, the overruling of their demurrers to the several cross-bills of the creditors; 2d, the final decree, in giving a preference to the execution of Twelves, and ordering his debt to be paid out of the fund in court; 3d, in requiring D. F. Constantine to file a cross-bill to foreclose his mortgage; and, 4th, in distributing the residue of the fund among the other creditors. By consent, West and wife, their trustee and child, also assign cross-errors—to-wit, 1st, the overruling of their demurrers to the several cross-bills of the creditors; 2d, the refusal of the chancellor to compel those creditors to elect whether they would proceed at law or in equity; 3d, the dismissal of the cross-bill of West and wife, and refusing to decide the question of fraud set up by them and the trus-

tée against D. F. Constantine ; and, 4th, that the final decree ought to have settled the rights of all the parties.

The cause was argued, on all the assignments of error, by WM. P. WEBB, for the complainants ; S. W. COCKRELL, for the defendant Twelves ; S. F. HALE and WEBB & INGE, for the other creditors ; and W. COLEMAN, for West and wife, the trustee and Robert West ; but, as the points argued by the counsel are not passed upon by the court, their briefs are necessarily omitted, except as to the single point here decided.

. S. F. HALE and S. W. COCKRELL, for the creditors, contended that the complainants' mortgage, under the facts disclosed by the pleadings and proof, was fraudulent and void as against the creditors of the grantors ; and cited to this point the following authorities :—Montgomery v. Kirksey, 26 Ala. 172 ; Wiley, Banks & Co. v. Knight, 27 Ala. 336 ; Gazzam v. Poyntz, 4 Ala. 382; Wiswall v. Ticknor, 6 Ala. 185 ; Kissam v. Edmundson, 1 Iredell's Eq. 180 ; Hafner v. Irwin, 1 Iredell's Law, 495 ; Groves v. Wakeman, 11 Wend. 192 ; Wood v. Lowry, 17 Wend. 496 ; 2 Comstock, 365 ; 9 Paige, 406 ; 6 Hill, 458 ; 2 Michigan, 445 ; 9 Barb. 458 ; 12 Pick. 454 ; 2 Selden, 510.

WM. P. WEBB, in reply, insisted that the proof established the *bona fides* and validity of the complainants' mortgage, and that the defense of fraud was not properly presented on the pleadings ; citing Patterson v. Ware, 10 Ala. 444.

RICE, C. J.—The complainants seek by their bill to enjoin certain creditors of Y. L. West, and of Y. L. and Penelope West, from selling a certain stock of goods levied on at the instance of those creditors ; and to obtain a decree for the sale of those goods, and the application of the proceeds to the payment of the debts mentioned in the deed executed by said Y. L. and Penelope West to the complainants, on the 6th day of January, 1854, a copy of which is set forth in "Exhibit A" to the bill, and forms part of the bill. That deed is the foundation upon which the complainants base their right to the relief they seek ; and if it be fraudulent as to the

creditors of the Wests, who are not provided for in it, the complainants have no right to relief.

We cannot pronounce the deed fraudulent *upon its face*, because it does not distinctly appear *from it* that there were other creditors of the Wests at the time it was executed,—that Y. L. West was at the time wholly insolvent ; that the deed embraced all the unencumbered property owned by Penelope West, and that its inevitable tendency was to delay and hinder those other creditors.   But its terms are unusual, and cannot fail to awaken suspicion and induce scrutiny.

It is a sound principle, that when a debtor engaged in the mercantile business, in contemplation of insolvency, executes a deed as a security to a creditor, conveying his entire stock of goods, but reserves the possession of the goods, and the right to continue to carry on the business as he had carried it on before, and to sell the goods in an undefined way, accounting only for *the proceeds* of such sales ; and the creditor is aware of the contemplated insolvency,—this reservation creates the presumption of fraud, which, if not rebutted by other facts and circumstances, is sufficient, in law, to render the deed fraudulent and void as to the other creditors of the grantor.—Ticknor v. Wiswall, 9 Ala. 305.   That reservation is contained in the deed now under consideration ; and we find nothing in the record to repel the presumption of fraud arising from it, but much to sustain that presumption.

It appears from the statements of the bill, and the evidence in the cause, that the complainants are "late partners in trade" ; that in June, 1853, the said D. F. having previously purchased the interest of said F. L. in a certain stock of goods in the town of Eutaw, sold and delivered the same to Y. L. West and Penelope West, his wife, for about $7,069 23-100, for which they executed seven promissory notes ; that about $2,132 65-100 of that sum was paid not very long after the sale ; that at and before the sale, Y. L. West was wholly insolvent, and still continues to be so ; that the said D. F. refused to sell to him alone ; that the said Penelope had a separate estate, which consisted of " the north-east quarter, and the east half of the north-west quarter, of section thirty-one, township twenty-one, range two east,—it being the land held by her in right of dower in the estate of her former

husband; also the following slaves, viz.: Frank, Hannah, Tom, Sam, Alfred, Richard, Susan, Moses, Solomon, and Sarah and her child"; that in June, 1853, *the said D. F. took a mortgage, executed by Y. L. and Penelope West, upon all of her aforesaid separate estate*, to secure the payment of the price at which he had sold them the stock of goods as aforesaid; that thereupon the said Y. L. and Penelope "commenced and carried on the mercantile business in the town of Eutaw, under the name, style and firm of P. West"; that complainants were under no legal obligation to become bound as their endorsers or sureties to enable them to purchase a new and additional stock of goods, but consented to become so bound for them, *with a knowledge that they were "somewhat embarrassed" and unable to replenish their stock of goods on their own credit*, upon the agreement of said Y. L. and Penelope to "secure them against all responsibility and loss on account of the said purchase, and also to secure the said debt to the said D. F. for the purchase of the said original stock of goods"; and that accordingly the said Y. L. and Penelope executed the deed on which the complainants found their right in this case.

It further appears that, in consideration of the said agreement and the execution of said deed, complainants became bound as the sureties of the said Y. L. and Penelope West, and liable for the purchase of additional stock of new goods, as follows: to Catlin, Leavitt & Co., for about $1249 25-100; to Oliver, Jones & Granger, for about $111 96-100; to George C. Dunbar, for about $360 25-100, and to Webb & Smith for about $70,—all of which, at the filing of the bill, were unpaid, and some of which were not then due; that about May, 1854, the said Y. L. and Penelope, by the consent of complainants, packed up the goods then on hand, for the purpose of removing them to Macon, Mississippi; that after the goods were thus packed up and about to be removed, they were levied upon at the instance of certain creditors of Y. L. West, and of Y. L. & Penelope West, who are made defendants to the bill; and that the debt of one of those creditors, Stephen Twelves, had been reduced to judgment, and execution thereon put in the hands of the sheriff, before the execution of the deed to complainants. It does not appear that the said Y. L. and Penelope West, or either of them, had any

property not exempt by statute from levy and sale under legal process, except that embraced by their mortgage to D. F. Constantine and their deed to the complainants ; nor does it appear that the separate estate embraced by the mortgage was inadequate to secure the payment of the debt to D. F. Constantine, or that there was any necessity for procuring further security for that debt, or for procuring or accepting the deed to complainants, except the necessity they created by their voluntary agreement to become bound as endorsers or securities for Y. L. and P. West as aforesaid—an agreement which, from its uncertainty, imposed no legal obligation upon them.—Erwin v. Erwin, 25 Ala. 236.

The complainants joined in the execution of the deed, with a knowledge of the condition of the Wests as above disclosed, and with a knowledge that there were creditors of the Wests who would inevitably be delayed and defeated by the deed in the collection of their debts, if it could be upheld against such creditors. They do not even pretend to have been ignorant in these respects. With this knowledge, it is incredible that the mere security of their debt was their only object in joining in the execution of the deed. Look at its extraordinary provisions. It conveys to them *generally* all the property of the debtors not exempt by statute from levy and sale under legal process, which had not been conveyed by the previous mortgage to one of the complainants, without any other description than the following, to-wit : " all the goods, wares and merchandize which the said P. West and Y. L. West have now on hand, comprising the entire stock of goods, &c., with which they are now carrying on the business of merchandizing in the town of Eutaw, including as well those contained in the invoices which were lately purchased from the foregoing named parties, as those before purchased from the said D. F. Constantine or any other person ; together with all the notes and accounts made by the said Wests, for goods sold during the year 1853, and due the first of January, 1854, amounting to about the sum of twelve hundred dollars." It provides expressly that " the said P. West shall *continue to carry on the said business in the town of Eutaw as heretofore, to sell the said goods, wares and merchandize,* to good and responsible men, *in the usual way, the proceeds of which* the said

Constantines are to have the entire control of, for the purpose of paying off the debts before specified, in the order mentioned." It does not define " the usual way" ; yet it limits the control of the Constantines to " *the proceeds*" of the sales made in that undefined " way." It provides that " any and all other goods, which may *hereafter be purchased* through the assistance of the said Constantines, for *replenishing the stock and keeping up the business*, shall be held liable to *all the provisions of this deed*." It then declares, that " if the said P. West or Y. L. West shall pay and satisfy all the debts herein specified, together with the balance due D. F. Constantine for the original purchase, then this deed to be void ; *until then*, to remain in full force and effect." It does not upon its face mention or fix any law-day, but abstains from authorizing the Constantines either to take possession of the goods, or to sell them, in case of the failure of the Wests to pay the said debts and the said balance therein mentioned.

Before the expiration of five months after the execution of the deed, we find the debtors, *by the consent of the complainants*, with the goods boxed up for removal from Eutaw, Alabama, where the deed says the business was to be continued, to Macon, Mississippi ; and one of the complainants ready to go to the same place ! And but for the levies made at the instance of the creditors, who are defendants in this case, the goods would then have been removed out of this State. This intended and attempted removal sheds a light on the real nature of the transaction between the Constantines and Wests, and the motives which induced the execution of the deed. For, although a deed which, at the time of its execution, is fair and valid as against creditors, cannot become fraudulent and void by matters occurring afterwards ; yet, in determining as to the intent with which a deed was executed, it is competent, as against the parties to it, to look to the use which they have made of it. The use to which they applied it, is, as against them, evidence of the intent with which they made it.—Worseley, assignee of Slader, v. de Mattos & Slader, 1 Burr. Rep. 484.

Admitting that *one of the objects* of the complainants, in joining in the execution of the deed and assenting to its provisions, was to secure the payment of their debt; yet the

40

evidence in the case, and the provisions of the deed, impel us to the conclusion, that they made use of their debt as a colorable consideration, to enable the debtors to withhold their property from their other creditors, and that there was an intent to provide a means for the Wests to carry on their mercantile business, and to put the goods and the proceeds of their sale beyond the reach of all creditors not mentioned in the deed; and we must therefore hold the deed to be fraudulent and void as to the creditors of the grantors.— 1 Swift's Digest, (revised in 1853,) 265–277.

This conclusion renders it unnecessary to examine any other question presented by the assignment of errors by the complainants. They were not entitled to any relief; and the decree has not injured them.

A few words will dispose of the assignment of errors by West and wife, the trustee, and Robert West by his guardian.

None of these parties have any right to the fund which the chancellor decreed to be distributed; as against the creditors to whom the chancellor ordered it to be paid. That fund consists of the proceeds of the property conveyed to complainants by the deed which we have above declared to be void as to the creditors. But, although it is void as to the creditors, it is valid as between the parties to it. It therefore deprives West and wife of any right to that fund, as against the creditors provided for in it, and leaves the fund subject to the payment of the debts of the other creditors. The trustee and Robert West never had any right to that fund. Their rights are confined to the property embraced by the mortgage to D. F. Constantine, as to which nothing was decided or decreed by the chancellor, in such manner as to conclude any of the parties. The decree of the chancellor is simply a distribution of the fund above mentioned; and does not, and cannot, deprive West and wife, the trustee, or Robert West, of any right. The right of West and wife, and the trustee and Robert West, as to the separate estate of Mrs. West, as well as the right of each of them to assail the mortgage to D. F. Constantine, or to defend against it, remains wholly unaffected by any decision of the chancellor, or by any of his decrees in this cause.

As none of the parties who have assigned errors, have any

right to a reversal of the decree which has been appealed from, that decree must be affirmed. The complainants must pay the costs of the appeal taken by them ; and West and wife, the trustee, and the guardian of Robert West, must pay the costs of their appeal.