# Benedict, Hall & Co. v. Renfro Bros.

*Creditors' Bill to have Mortgage on Stock of Merchandise declared Fraudulent and Void.*

1. *Mortgage on stock of merchandise ; when fraudulent as against unsecured creditors.*—An insolvent debtor mortgaged his stock of merchandise, worth about $6,000, some of which was of a perishable nature, to secure a debt of $3,000; the mortgagee not knowing that the debtor was insolvent, but knowing that he was financially embarrassed; and it not appearing that the debtor owned any other property liable to the satisfaction of his debts. In the mortgage the express power to sell the merchandise, or any of it, is not retained by the mortgagor, but the merchandise is left in his possession, and, by implication, it is clear that it

[Benedict, Hall & Co. v. Renfro Bros.]

was the intention of the parties that he should remain in possession until the law-day, which was ninety days from the date of execution. *Held,*

(*a*) That it is a necessary conclusion that a power of sale was impliedly retained by the mortgagor, which was as much a part of the contract as if expressed.

(*b*) That the mortgage, operating, in the most effectual manner, to shield the property from the attack of the unsecured creditors, for the joint benefit of the mortgagor and mortgagee, inevitably tended to hinder and delay such creditors, and, as against them, it was, therefore, fraudulent and void.

(*c*) That the mortgage, impliedly enabling, as it did, the debtor to sell at his option, and appropriate the proceeds of sale to his own use, is, in effect, a conveyance "made in trust for the use of the person making the same," within the meaning of the statute, and is, for this reason, void as against the unsecured creditors.

2. *Same ; when mortgagor in possession sells as agent of mortgagee ; effect of.*—The court adds: "We are not to be understood as intimating in this opinion, that a mortgage of merchandise would be rendered conclusively invalid, where the mortgagor is, in good faith, left in possession of the goods, with power to sell for the exclusive use of the mortgagee, holding the proceeds of sale for his benefit. In such case, he may well be deemed the mere agent of the mortgagee, acting for him and in his behalf."

APPEAL from Lee Chancery Court.

Heard before Hon. N. S. GRAHAM.

This was a bill in equity, exhibited by Benedict, Hall & Co. and others, creditors of Crumley Bros., a mercantile partnership, "for themselves and all others who may join with them in filing the same, by bearing their part of the costs," against the said Crumley Bros., and against Renfro Bros., and others, for the purpose, among other things, of having declared fraudulent and void, as against the complainants, a mortgage executed by the said Crumley Bros. on the 35th December, 1878, conveying to the said Renfro Bros. a designated stock of goods, wares and merchandise, as security for a debt of $3,000, which the former owed to the latter; and of having the property conveyed subjected to sale for the satisfaction of complainants' demands. The defeasance contained in the mortgage is as follows: "Upon condition, however, that if we pay or cause to be paid, at or before maturity, our promissory note for the sum of three thousand dollars, bearing even date with these presents, payable ninety days after date to the said Renfro Bros., then this conveyance shall be null and void. But if default be made in the payment of said note, then said Renfro Bros. shall be, and they are hereby authorized to take possession of said personal property, and sell the same for cash at public sale," etc. The other facts necessary to an understanding of the points decided, are sufficiently stated in the opinion.

The chancellor on the hearing, had on pleadings and proof, was of the opinion that the complainants were not entitled to

relief, and caused a decree to be entered, dismissing their bill. That decree is here assigned as error.

W. H. BARNES, for appellant, cited *Price v. Mazange*, 31 Ala. 701; *Constantine v. Twelves*, 29 Ala. 607; *Tickner v. Wiswall*, 9 Ala. 305; *Crawford v. Kirksey*, 55 Ala. 282; *Robinson v. Elliott*, 22 Wall. 513; *Ryall v. Rolles*, 1 Ves. Sr., 348; *Worseley v. DeMattos*, 1 Burr. 467; *Edwards v. Harben*, 2 Term Rep. 587; *Wordall v. Smith*, 1 Camp. 332; *Reed v. Blades*, 5 Taunton, 212; *Lang v. Lee*, 3 Rand. 410; *Janney v. Barnes*, 11 Leigh, 100; *Sheppards v. Turpin*, 3 Gratt. 357; *Spence v. Bagwell*, 6 Gratt. 444; *Perry v. Shenandoah Nat. Bank*, 27 Gratt. 755; *Divver v. McLaughlin*, 2 Wend. 596; *Wood v. Lowry*, 17 Wend. 348; *Griswold v. Sheldon*, 4 N. Y. 581; *Edgell v. Hart*, 13 Barb. 380; s. c. 9 N. Y. 213; *Gardner v. McEwen*, 19 N. Y. 123; *Mittnacht v. Kelly*, 3 Keys, 407; *Russell v. Winne*, 37 N. Y. 591; *Southard v. Benner*, 72 N. Y. 424; *Brackett v. Harvey*, 91 N. Y. 214; *Coburn v. Pickering*, 3 N. H. 415; *Ranlett v. Blodgett*, 17 N. H. 298; *Putnam v. Osgood*, 51 N. H. 192; 52 N. H. 148; *Collins v. Myers*, 16 Ohio, 547; *Freeman v. Rawson*, 5 Ohio St. 1; *Hannon v. Abbey*, 7 Ohio St. 218; *Chophard v. Bayard*, 4 Minn. 533; *Stein v. Munch*, 24 Minn. 390; *Mann v. Flower*, 25 Minn. 500; *Steinart v. Deuster*, 23 Wis. 136; *Blakeslee v. Rossman*, 43 Wis. 116; *Greenebaum v. Wheeler*, 90 Ill. 296; *Dunning v. Mead, Ib.* 376; *White v. Graves*, 68 Mo. 218; *Roeckel v. Jacob*, 2 Mo. App. 183; *Greeley v. Reading*, 74 Mo. 309; 4 Yerg. 540; *Simpson v. Mitchell*, 8 Yerg. 417; *Nat. Bank v. Ebbert*, 9 Heisk. 153; *Joseph v. Levi*, 58 Miss. 843; *Baldwin v. Flash, Ib.* 593; s. c. 59 Miss. 61; *Bank v. Goodrich*, 3 Col. 139; *Orton v. Orton*, 7 Oregon, 478; *Kuhn v. Mack*, 4 W. Va. 186; *Garden v. Bodwig*, 9 W. Va. 121; *Hower v. Geesaman*, 17 Serg. & R. 251; *Bentz v. Rockey*, 69 Penn. St. 71; *Bishop v. Warner*, 19 Conn. 460; *Lewis v. McCabe*, 49 Conn. 141; *Sparks v. Mack*, 31 Ark. 666; *Tallon v. Ellison*, 3 Neb. 63.

J. M. CHILTON, *contra.* (No brief came to the hands of the reporter.)

SOMERVILLE, J.—No subject has, perhaps, been more discussed in the courts of this country, especially within the past few years, than the mortgage of stocks of merchandise, when the mortgagor is allowed, either expressly or by necessary implication, to retain possession with a reserved power of sale over the mortgaged property. The courts of the several States are in irreconcilable conflict on the question, whether the reser-

vation of such a power conclusively vitiates the instrument for fraud, as matter of law, without regard to any specific intent to defraud, or whether it is a strong badge of fraud, furnishing only presumptive evidence of fraudulent intent as matter of fact for the jury, and capable of being rebutted by proof to the contrary by one who seeks to uphold the conveyance. The decisions will be found fully collected and reviewed at length by the various text-writers who have undertaken to treat of this particular subject. As well observed in *Robinson v. Elliott*, 22 Wall. 531, these cases " can not be reconciled by any process of reasoning, or on any principle of law."—Jones on Chat. Mortg. §§ 379, *et seq.;* Herman on Chat. Mortg. §§ 100, *et seq.,* p. 222; Mortg. of Merchandise (Pierce), §§ 33, *et seq.; Ib.* §§ 88 *et seq.*

The several decisions of this court, touching this general subject, are cited in *Commercial Bank of Selma v. Brewer*, 71 Ala. 574, and the rule so far established by them is stated to be, that the conveyance by an insolvent mortgagor of substantially all of his unencumbered property—consisting of an ordinary stock of merchandise—with a stipulation for retention of possession, and with reservation of a power of sale for the mortgagor's own benefit, would be void on the ground of its " inevitable tendency " to hinder and delay the creditors of the grantor. In this case it was considered not to be material that the fact of the mortgagor's insolvency was unknown to the mortgagee at the time of the execution of the conveyance. It was further added by the court that they might go further possibly and declare the instrument void on the ground that it reserved a benefit to the grantors.—*Constantine v. Twelves*, 29 Ala. 607; *Price v. Mazange*, 31 Ala. 701; *Wiley v. Knight*, 27 Ala. 336.

In the absence of all registry laws, the manual delivery of mortgaged personal property would be essential ordinarily to the validity of the transaction. But statutes providing for the recording of such instruments are a substitute for possession by the mortgagee, and repel any implication of fraud arising from the mortgagor's retention of possession, at least until the day of default not unreasonably prolonged.—Herman on Chat. Mortg. § 100; Jones on Chat. Mortg. § 380; *Hopkins v. Scott*, 20 Ala. 183. This has been justly said to be a concession to commerce, made in obedience to the growing exactions of trade.

The objection urged in the present case is not to any stipulation, express or implied, for the mortgagor's retention of *possession* merely, but to an implied reservation of a power of sale in the mortgagor for his own use and benefit, and the

argument is, that this feature of the case operates to stamp the transaction with fraud.

The general principle is well stated by the Supreme Court of the United States, in the case of *Robinson v. Elliott*, 22 Wall. 523, where it is said that " the creditor must take care in making his contract, that it does not contain provisions of no advantage to him, but which benefit the debtor, and were designed to do so, and are injurious to other creditors. The law will not sanction a proceeding of this kind. It will not allow the creditor to make use of his debt for any other purpose than his own indemnity. If he goes beyond this, and puts into the contract stipulations which have the effect to shield the property of his debtor, so that creditors are delayed in the collection of their debts, a court of equity will not lend its aid to enforce the contract." This principle is as ancient in our jurisprudence as *Twyne's case*, decided nearly three centuries ago, where the doctrine was settled that the retaining of goods in possession by a vendor, with the power of trading with them as his own, rendered the sale fraudulent and void as against creditors. The reason assigned was that " he continued in possession, and *used them as his own*, and by reason thereof he *traded and trafficed with others*, and defrauded and deceived them."—3 Coke, 80 ; s. c. 1 Smith's Lead. Cases (H. & W.), 33. The controlling principle of the case is, that the possession of property, with the accompanying power of dominion and disposition, is an incident of ownership, the right to which, in all honesty and justice, should be denied to any one except the absolute owner. The law, therefore, justly requires that all transfers or assignments of a debtor's property should be made in good faith for the purpose of 'paying or securing his debts, and " without any intent to lock up the property from creditors for the use of the debtor."—Bump on Fr. Conv. (3d Ed.) 399. Our present statute is a strong affirmation of this principle of law, and was designed more effectually, perhaps, to carry into effect the doctrine of *Twyne's case.* It declares that " all deeds of gift, all conveyances, transfers and assignments, verbal or written, of goods, chattels, or things in action, *made in trust for the use of the person making the same*, are void against creditors, existing or subsequent, of such person." Code, 1876, § 2120.

We proceed to apply these principles to the case in hand. The property here mortgaged is a stock of ordinary merchandise, a portion of which is shown to be of a perishable nature. The value of the goods is shown to be between four and six thousand dollars, and the amount of the mortgage debt the sum of three thousand dollars. The mortgagors were insolvent at the time of the execution and delivery of the instrument,

although this was not probably known to the mortgagees. The most that can be inferred is, that the financial embarrassment of the mortgagors was known. The grantors in the conveyance do not appear to have owned any other property liable to the satisfaction of their debts. No express power is conferred on the mortgagors to sell the goods, but they were left in possession of them, and by implication it was clearly understood, from the terms of the mortgage, that they were to remain in possession until the day of default, which was ninety days from the date of its execution. "The implication is irresistable," as observed by Bynum, J., in *Cheatham v. Hawkins*, 76 N. C. 335, 337, "from the very nature of the business that they [the mortgagors] were to continue in selling and trading as before; otherwise, why retain possession of goods which would be a dead incumbrance upon their hands, without the power of disposition?" It would be an incredible supposition that the mortgagors, under the circumstances attending this case, were expected to refund this borrowed money by closing their doors and locking up their merchandise, thus entirely abandoning their business. Especially is this true, in view of the fact that they did not pursue this course, but continued in possession, making sales of the goods as if they were their own, until arrested in this by the levies made by their various attaching creditors. It is a necessary conclusion that a power of sale was implied, and being implied, it was as much a part of the contract as if expressed.—*Freeman v. Rawson*, 5 Ohio St. 1 ; *Stanley v. Bunce*, 27 Mo. 269 ; Herman on Chat. Mortg. 235 ; *Gardner v. Johnston*, 9 W. Va. 403.

Such a power, when vested in a mortgagee, and accompanied with possession, obviously confers on him a dominion over the property, which is utterly inconsistent with the continued existence of the lien intended to be created by the mortgage. It is entirely repugnant to, and subversive of such lien. The instrument contains within itself, in its very inception, the mechanism of its own sure destruction. The mortgagor remains practically the owner of the property, with the right to sell and appropriate it at pleasure, without liability to account to the mortgagee, save at the mere option of the latter, which may never be brought into exercise until some other creditor seeks to call the debtor to account by levying upon the property. Such an instrument is, therefore, no valid security, but operates in the most effectual manner to shield the property from the attack of other creditors, for the joint benefit of the mortgagor and mortgagee, thus tending inevitably to hinder and delay such creditors.—Herman on Chat. Mortg. 227–236 ; Mortg. of Merchandise (Pierce), §§ 33 *et seq.*; *Ib.* § 155 ; *Wiley v. Knight*, 27 Ala. 336 ; *Com. B'k Selma v. Brewer*, 71

Ala. 574; Jones' Chat. Mort. §§ 382 *et seq.*; *Lund v. Fletcher*, (39 Ark. 325), 43 Amer. Rep. 270; *Orton v. Orton* (7 Or. 478), 33 Amer. Rep. 717; *Cheatham v. Hawkins*, 80 N. C. 161; *Robinson v. Elliot, supra; Constantine v. Twelves*, 29 Ala. 607.

A mortgage, with such a power of sale, by which the mortgage debtor is enabled to sell at his option, and appropriate the proceeds of sale to his own use, is, as we have said above, virtually a conveyance "made in trust for the use of the person making the same," within the meaning of the statute, and this feature of itself stamps the transaction with invalidity.—Code, 1876, § 2120. In construing this statute, this court said, in *Reynolds v. Crook*, 31 Ala. 634, that it is essential to the validity of every trust conveyance, intended as a security, that its "whole purpose" should be the devotion of the property *bona fide* to the indemnification of the creditor, and that "if *a part of its purpose* is, that it shall avail or be used for the ease or favor of the grantor, it is void as to creditors."—*Miller v. Stetson*, 32 Ala. 161. The principle is essentially akin to that which pronounces every conveyance void which reserves a power of revocation in the grantor. The power to sell the mortgaged property and appropriate its proceeds does not differ in effect from a reserved power to *revoke* in whole or in part. In *Riggs v. Murray*, 2 John. Ch. 565, it was said by Chancellor Kent, in a case of this character, that the grantors had been "sporting with the property as their own," and the conveyance carried with it a necessary inference of a purpose to hinder, delay or defraud creditors. Such a power of revocation was said to be fatal to the instrument and to "poison it throughout." It was very long ago held that a reserved power to mortgage, or to sell, as the grantor might deem fit, was tantamount to a power of revocation, and therefore vitiated a conveyance for fraud.—*Tarback v. Marbury*, 2 Vermont, 510; Mortg. Merch. (Pierce) §§ 154 *et seq.* All cases of this general class come within the evils intended to be reached by *Twyne's case*, where it was said that "fraud is always apparelled and clad with a trust, and trust is the cover of fraud."

The authorities are numerous in support of these views. The Supreme Court of North Carolina, in discussing this subject in *Cheatham v. Hawkins*, 76 N. C. 335, say: "The power to sell was the power to destroy, and the sale was the destruction and extinction of the property. If there were other unsecured creditors at the time of this assignment, and no other property of the debtor than that conveyed in the mortgage, out of which creditors could make their debts, the fraudulent intent would seem irrebuttable. A clear benefit is secured to the debtor, and a clear right is withheld from the creditor be-

yond what the law permits.   An assignment can not cover up and preserve the property for the debtor's use, or protect it from the remedies and demands of the creditors."   There being no evidence to rebut "the presumption of fraud raised by the law," the mortgage was declared by the court to be void for fraud.

In the case of *Tennessee National Bank v. Ebbert*, 9 Heisk. (Tenn.) 153, a similar mortgage was decided to be void, because it afforded such "facilities for fraud" as to stamp it as "wanting in legal good faith on the plain principle," as was said, that every reasonable man is presumed to intend the probable consequences of his own act.   And besides," it was added, "there is clearly a benefit contracted for to the grantors on the face of the deed, and a prejudice to the rights of other creditors."

In *Collins v. Myers*, 16 Ohio, 547, the court declared that "to hold that such a mortgage was valid, would furnish a complete shelter, under which a man could carry on trade for his own benefit, completely protected against the payment of his debts, and placed wholly beyond the reach of creditors."   The property was said not be "held by the mortgage, but by the will of the debtor; because if the debtor sees proper to dispose of it, he has the power under the mortgage."   For these reasons, such a mortgage on a stock of merchandise was decided to be "void as against the policy of the law."

In Mississippi, such conveyances have been held void, among other reasons, "because of their susceptibility of abuse, by reason of the ease with which they may be employed for wrong purposes, to the injury of creditors."—*Joseph v. Levi*, 58 Miss. 843.

In more than one case they have been held void on the ground that they open a wide door for the easy commission of fraud, and are, therefore, contracts against public policy. *Phelps v. Murray*, 2 Tenn. Ch. 747; *Lund v. Fletcher* (39 Ark. 325), 43 Amer. Rep. 270.

A large number of other adjudications on this subject could be cited, giving forcible reasons in support of the doctrine that a reservation to the mortgagor of a discretionary power of sale renders the mortgage fraudulent as against the creditors of the mortgage debtor.   When this fact is made to appear, the better view seems to us to be, that the conveyance is void without regard to the existence of any actual intent to defraud. As forcibly observed by a recent author, "with the enactment of statutes granting a most liberal exemption of personal property, and the abolishment of the laws for the arrest and imprisonment of debtors, a creditor has but a naked claim against the property of his debtor, and it should receive the most ef-

fective support, and every rule calculated to prevent a debtor from secreting or covering property should be sustained with courage and energy."—Herman on Chat. Mortg. 235.

We are not to be understood as intimating, in this opinion, that a mortgage of merchandise would be rendered conclusively invalid, where the mortgagor is in good faith left in possession of the goods with power to sell for the exclusive use of the mortgagee, holding the proceeds of sale for his benefit. In such case he may well be deemed the mere *agent* of the mortgagee, acting for him and in his behalf.—Mortg. of Merch. (Pierce) §§ 46, 49, 53 ; *Conkling v. Shelley*, 28 N. Y. 360 ; *Fisk v. Harshaw*, 45 Wis. 665 ; *Tickner v. Wiswall*, 9 Ala. 305.

Under the influence of these principles, it needs no further argument to show that the mortgage executed by Crumley Brothers to the Renfro Brothers, on the twenty-fifth day of December, 1878, was fraudulent and void as against the appellants and other creditors of the mortgagors, and that the chancellor erred in not so holding. The decree, dismissing the bill filed by appellants, is reversed, and the cause is hereby remanded, that further proceedings may be had in the chancery court in accordance with the views expressed in this opinion.